UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| TIMOTHY VAUGHN, | ) | |
|       Petitioner | ) ) ) | |
| v. | ) ) | No. 1:04-CV-368 TS |
| CECIL DAVIS, | ) ) ) | |
|       Respondent | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Timothy Vaughn's Petition for Relief under 28 U.S.C. § 2254 [DE 5], filed on November 11, 2004.

**A.     Relevant Facts**

Due to information received prior to July 13, 2004, the Internal Affairs Department of the Indiana State Prison became suspicious that Ms. Kiyormi Luckett would attempt to give the Petitioner contraband on her next visit to see him. Internal Affairs left a note at the prison's Information Desk that it should be informed the next time Luckett signed up for a visit.

Luckett did come for a visit on July 13, 2004. When she arrived, Internal Affairs Officer Whelan and Sgt. Hill asked her to accompany them for an interview in the Administration Building. In that interview, Whelan and Hill asked Luckett about her visit and her relationship with the Petitioner. When she was presented with evidence from the Internal Affairs Department's investigation, she admitted that she had US currency with her that she had intended to give to the Petitioner.

When asked, Luckett denied that she had any other contraband on her. She was asked if she would submit to a more thorough search or turn the money over to investigators. Luckett did not consent and expressed her desire to leave the facility. Luckett was then escorted off Indiana State Prison property.

After Luckett left, Internal Affairs Officer Whelan and Mr. Ayres[1] interviewed the Petitioner, who denied any knowledge that Luckett was going to bring him anything. However, the Petitioner had placed a call to Minnesota earlier that morning asking someone to call Rose in Michigan City, Indiana, and check whether Rose had sent money off to Luckett for her visit. Both Whelan and Hill's interview with Luckett and the Petitioner's phone call to Minnesota were recorded and included in an investigation file.

The Petitioner was sent a Notice of Disciplinary Hearing on February 20, 2004, which informed him of the nature of the charge against him and listed his rights concerning the hearing. The Petitioner was charged with a violation of code 113, attempting to engage in trafficking with anyone who is not offender residing in the same facility, a Class A offense. The Petitioner stated that he did not want to have a lay advocate with him at the hearing and stated he did not want to call any witnesses. He did, however, request that the money be presented as physical evidence.

The Conduct Adjustment Board held a hearing regarding the charged offense on July 22, 2004. The Board considered staff reports, the Petitioner's statement, evidence from witnesses, and the investigator's case file. The Board found the Petitioner guilty and sanctioned him with an earned credit time loss of 180 days.

The Petitioner's appeals were denied and the sanctions upheld by the Faculty Head on

---

[1] The Respondent does not provide any detail as to who Mr. Ayres is or his position.

August 13, 2004, and the Final Reviewing Authority on August 24, 2004. Having exhausted his administrative remedies, the Petitioner filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court. The Response filed on behalf of the Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana has submitted the administrative record including documents designated A through I, which set out the underlying procedures the aforementioned proceedings. The Petitioner filed a traverse.

**B.     Standard of Review**

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires that certain procedural steps outlined in this decision be followed. Due process requires that the Petitioner be given: (1) written notice of the charges against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Henderson v. United States Parole Comm'n*, 13 F.3d 1073 (7th Cir. 1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

For the hearing to be meaningful, the prisoner should be afforded an opportunity to be heard before an impartial decision maker, *id.*, and the decision must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Institution at Walpole v. Hill*, 472 U.S. 445 (1985). The so-called "some evidence" standard applies in this circuit. *See Webb v. Anderson*, 224 F.3d 649 (7th

3

Cir. 2000); *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999); and *Meeks v. McBride,* 81 F.3d 717 (7th Cir. 1996). This is a lenient standard, requiring no more than "a modicum of evidence." *Webb*, 224 F.3d at 652. Even evidence that can be characterized as meager is sufficient to support the revocation of good time credits so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (*citing Hill*, 472 U.S. at 457). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (citing *Hill*, 472 U.S. at 455–56).

**C.     Discussion**

The Petitioner lists three grounds for relief in his November 3, 2004, Petition. The Court will address these arguments in turn.

*1.     Ground One*

Under "Ground One," the Petitioner claims that during his screening, the Board denied his request that he be presented with Luckett's statement, not the case file, which he believes is hearsay. He also claims that the Board violated his rights when it relied on what he asserts is a hearsay statement from another convicted felon prior to Luckett's visit. Ground One also includes the claim that his due process rights were violated as he was punished for conduct that is not proscribed by rules or policy.

The Court is unclear as to what statement the Petitioner refers to. The record does not reflect that Luckett ever gave a statement regarding these events, only her answers to questions posed to her during her July 13 interview at the Prison. It may be that the Petitioner's objection is that the

4

Board relied on the Report of Investigation of Incident prepared by Whelan rather than the recording made of this interview. However, this is not so, as the Board indicated that it reviewed the investigation case file, which included an audio recording of the Prison's interview with Luckett.

To the extent that the Petitioner intends to argue that he was denied the right to call Luckett as a witness, his claim is without merit, as he waived his right to call witnesses when he filled out and signed the Notice of Disciplinary Hearing. Additionally, the Court notes that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

The Petitioner also argues that the Board erred by considering supposedly hearsay testimony from another inmate given to authorities prior to Luckett's July 13 visit. The rules of evidence do not apply to prison disciplinary hearings and courts have repeatedly held that the only relevant standard is the "some evidence" standard cited above. See *Niam v. Ashcroft*, 354 F.3d 652, 659 (7th Cir. 2004) ("administrative agencies are not bound by the hearsay rule or any other of the conventional rules of evidence, but only by the looser standard of due process of law."). In this case, there was ample testimony presented apart from statements from another prisoner. Because the evidence presented at the Petitioner's hearing certainly met the "some evidence" standard, the Petitioner's hearsay argument is denied.

Lastly, the Court is at a loss to make sense of the Petitioner's argument that he was punished for actions that are not prohibited in the Prison's code or policies. The Board punished him for violating code 113, attempting to engage in trafficking with anyone who is not offender residing in the same facility, a Class A offense. The Petitioner was on notice that such actions were *ultra vires* and accordingly his punishment does not violate his due process rights.

5

**2.	Ground Two: Sufficiency of the Evidence**

Under "Ground Two," the Petitioner states there was insufficient evidence to find him guilty, because the Board did not produce either Luckett's statement or the currency she brought to the prison. As noted above, the amount of evidence needed in these types of cases is very modest. In this case, the presented evidence meets the "some evidence" standard. The Report of Investigation of Incident (Exhibit B) states that Luckett admitted that she was attempting to bring US currency to the Petitioner. The Petitioner's phone call earlier that morning indicated that he was expecting Luckett to bring him money. Even without an additional statement from Luckett or real evidence in the form of the currency Luckett brought with her to give to the Petitioner, there was more than sufficient evidence to support the Board's finding. The Defendant's argument that he was found guilty on insufficient evidence is denied.

**3. *Chain of Custody***

Under "Ground Three," the Petitioner argues that the Board failed to establish chain of custody for the currency and improperly admitted Luckett's statement. The purpose of establishing a chain of custody is to guaranty the integrity of physical evidence and to prevent the introduction of evidence which is not authentic.

In this case, the Prison never took the currency from Luckett. The Prison never had the currency or claimed to have it. No currency was presented before the Board in the Petitioner's hearing. Because this evidence was not introduced at the Petitioner's hearing, the Petitioner's chain of custody argument is nonsensical and denied.

6

The Petitioner's chain of custody argument as to Luckett's statement is equally bizarre. Elsewhere, the Petitioner complains that the Board did not consider Luckett's statement. Now, he claims it was improper for them to consider this statement, as the Prison did not establish a chain of custody. Whatever his intention, the Court sees no chain of custody problems in this case.

At heart, these arguments also challenge the sufficiency of the evidence presented against him. As the Court has already held, there was sufficient evidence presented to support the Board's determination of guilt.

## CONCLUSION

For these reasons, the Court DENIES the Petitioner's Petition for Relief under 28 U.S.C. § 2254 [DE 5].

SO ORDERED on August 3, 2005.

      S/ Theresa L. Springmann
      THERESA L. SPRINGMANN
      UNITED STATES DISTRICT COURT